IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 24-166 |
| | ) Judge Nora Barry Fischer |
| NICOY ANTHONY PHANG ROACHE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

I. INTRODUCTION

In this case, Defendant Nicoy Anthony Phang Roache is charged with conspiracy to possess with intent to distribute and distribution of five kilograms or more of cocaine and possession with intent to distribute and distribution of five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. (Docket No. 37). After a detention hearing was held on August 13, 2024, U.S. Magistrate Judge Patricia L. Dodge ordered that he be detained. (Docket Nos. 60; 61). Presently before the Court are Defendant's Motion for Release of Prisoner, (Docket No. 103), the Government's Response in Opposition, (Docket No. 109), Defendant's Second Motion for Release of Prisoner, (Docket No. 114),[1] and the Government's second Response in Opposition, (Docket No. 117). The record before the Court includes a transcript of the detention hearing and the evidence presented during same, including several admitted exhibits. (Docket No. 60; 109-9). The Court has also reviewed the bond report of the U.S. Probation and Pretrial Services. *See Pretrial Bond Report*. After careful consideration of the parties' submissions and having conducted a *de novo* review of the detention order issued by

---

[1] The Court ordered Defendant to file an amended brief with corrected citations because the Court was unable to locate eight cases cited by Defendant in his First Motion. (Docket No. 112).

1

Magistrate Judge Dodge, and for the following reasons, Defendant's Motions (Docket Nos. 103; 114) will be denied.

II.     BACKGROUND

On July 8, 2024, Defendant was charged by federal criminal complaint with conspiring to distribute cocaine. (Docket No. 25). At his initial appearance before U.S. Magistrate Judge Kezia O. L. Taylor, Defendant waived his right to a detention hearing. (Docket Nos. 31; 33). Thereafter, he was indicted for the instant offenses and filed a motion requesting a detention hearing. (Docket Nos. 37; 46). Consequently, Magistrate Judge Dodge held an arraignment and detention hearing on August 13, 2024, during which she thoroughly summarized the arguments and evidence presented:

> As I noted earlier, the government is seeking to detain Mr. Roache pending trial in this matter and asserts both that Mr. Roache is a danger to others and the community and a risk of flight.
>
> The government takes the position that it is entitled to a rebuttable presumption that detention is necessary due to the nature of the crimes for which Mr. Roache has been charged. Obviously, he has the presumption of innocence at this point.
>
> I do find and I don't think there's really any issue that the presumption does apply here. That presumption is rebuttable, which means that it can be overcome by Mr. Roache. The effect of that is placing the burden on him to produce some credible evidence to rebut it. That burden isn't a heavy one here.
>
> I will note that no evidence was presented on behalf of Mr. Roache to rebut that presumption. I have certainly considered the information that is in the Pretrial Services Report. So I will not eliminate the presumption altogether based upon that fact. And it certainly remains a factor for me to consider in connection with this case. So armed with that presumption, I want to turn to the factors that the Bail Reform Act requires me to consider.
>
> First, the nature and circumstances of the alleged offense. In that regard, we had certain evidence presented by the government, including Exhibits 1 through 8 and a proffer of what Detective Renk would have testified to if he was required to testify.

2

By way of brief summary, we heard that on approximately July 6, a confidential source met with Mr. Roache and others in Cleveland, Ohio where allegedly they discussed the distribution of large quantities of cocaine in which Mr. Roache was alleged to be the point of contact.

They allegedly agreed that 17 kilos of cocaine would be delivered to the confidential source in Pittsburgh on July 7. There was some discussion that there could be future orders on a one or two-week basis of narcotics.

Two vehicles travelled to Target to purchase telephones allegedly to conduct drug transactions, and the exhibits reflected what appears to be those purchases. Again, there was an agreement to meet the next day.

The price, as indicated, for the drugs that were allegedly to be delivered was about $15,500 per kilo. The next day, the confidential source sent Mr. Roache a map to meet at a location in Cranberry Township, Pennsylvania. There was surveillance, as well as aerial surveillance.

Mr. Roache arrived in a Dodge Charger. There was a Nissan Rogue that was also there, and there were multiple, as reflected in the exhibits, transportation and communication between the vehicles and the individuals.

At some point, Mr. Roache and others pulled out a large cardboard box. The confidential source manipulated that box, as well as Mr. Roache allegedly, and it was then opened. At that point, the confidential source gave a predetermined signal to law enforcement that there were, in fact, narcotics present.

That box allegedly contained 16 kilos of cocaine, 7 of which were tested and showed positive for cocaine. The approximate value of those 16 kilos in this market is somewhere between $320,000 and $576,000.

So that, in essence, is the nature and circumstances of the alleged offense. By summary, allegedly, Mr. Roache was responsible for delivery of large quantities of cocaine into the Western District of Pennsylvania and was the point of contact for future transactions.

And the various information that was presented during the proffer shows that there was an organized plan to do so, including breaking individuals up into different cells, planning for different orders, purchase of cell phones, using multiple vehicles with

multiple individuals. So that's the nature and circumstances of the alleged offense here.

In terms of the weight of the evidence, we know that a grand jury returned an indictment in which they found probable cause for the commission of these alleged offenses. Again, Mr. Roache was only charged at this point and entitled to that presumption of innocence. But I do find here based upon the proffer, the exhibits that were offered, that the weight of the evidence here is strong.

Turning to the history and characteristics of Mr. Roache, I'm relying pretty much exclusively on the information contained in the Pretrial Services Report, including that Mr. Roache has lived in Bedford, Ohio for about seven years, he would like to return to the residence of a close friend, Michelle Ayers. And Ms. Ayers would, according to Pretrial Services, be an appropriate third-party custodian, and I have no doubt that that is so.

The Pretrial Services Report lists two present employments by Mr. Roache, a JJ Catering and UV & J Construction. According to argument here today, that would result in income of about $150,000 a year. The government proffered that neither of those entities exist or operate, and I don't have any other evidence one way or the other with respect to that.

I've also noted the criminal history being minimal of Mr. Roache, and that's certainly a factor that I take into account here.

Looking at the fourth factor, which is the nature and seriousness of danger to others in the community, I note that this is a serious offense with which Mr. Roache has been charged, and it relates to very significant quantities or allegedly relates to very significant quantities of dangerous narcotics being brought into the Western District of Pennsylvania.

And the sophistication of the alleged offenses suggest to me that we are dealing here with individuals who understand the distribution of dangerous narcotics. That even includes the attempt to mask in the cardboard box the drugs allegedly found there.

So having considered all the evidence about the serious risk to others in the community and based upon the potential lack of any verifiable income, I do find by clear and convincing evidence that there are no conditions or combination of conditions that will reasonably ensure the safety of others. I do not find that there is a risk of flight here. But nonetheless, I am ordering that Mr. Roache be detained pending trial in this matter.

4

(Docket Nos. 60; 61; 109-9 at 33-37).

On October 28, 2024, during a status conference with the parties, Defendant provided the Court with additional employment and tax records and advised that he intended to file a motion seeking his release from custody. (Docket No. 89). On January 17, 2025, Defendant filed his first Motion for Release and the Government responded to same on February 12, 2025. (Docket Nos. 103; 109). The Court ordered Defendant to file a reply, but one was not filed. (Docket No. 110). At that time, the Court began its review of the briefing in this matter and discovered several errors in the citations in Defendant's Motion, finding that several of the cited cases did not exist. (Docket No. 112). Given same, the Court ordered Defendant to file an amended brief, which he did on March 18, 2025. (*Id.*; Docket No. 114). The Government then supplemented its Response on March 21, 2025. (Docket No 117).

Neither party has requested a hearing and the Court does not believe that a hearing is necessary given the existing record which includes the facts presented at the detention hearing and the additional records provided by defense counsel at a status conference before this Court. As the Motions have been fully briefed, they are now ripe for disposition. (Docket Nos. 103; 109; 114; 117).

III.   LEGAL STANDARDS

A District Judge reviews the decision of the U.S. Magistrate Judge granting or denying bail *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record. *See e.g.,* 18 U.S.C. § 3142(f)(2)(B); *United States v. Burgess*, Crim. No. 09-150, 2009 WL 2038148, at *2 (W.D. Pa. Jul. 9, 2009).

IV.     DISCUSSION

In this Court's estimation, Magistrate Judge Dodge correctly concluded that Defendant has failed to rebut the presumption that he is a danger to the community and must be detained. *See United States v. Perry*, 788 F.2d 100, 118 (3d Cir. 1986). Additionally, after conducting its own assessment of the § 3142(g) factors, the Court finds that that Government established by clear and convincing evidence that pretrial detention was and is appropriately ordered in this case. *See* 18 U.S.C. § 3142(e)(1). Following the controlling standards set forth above, it appears to the Court that the record sufficiently establishes that Defendant should remain detained pending trial.

If probable causes exists that the defendant has committed an offense under the Controlled Substances Act for which the maximum penalty is more than ten years' imprisonment, the Bail Reform Act creates a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person…and the safety of any other person and the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam) (quoting 18 U.S.C. § 3142(e)). The Government may establish probable cause by presenting evidence at the detention hearing or by relying on the Indictment itself. *United States v. Suppa*, 799 F.2d 115, 118-19 (3d Cir. 1986). To rebut the presumption, "the defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *Carbone*, 793 F.2d at 560. While the burden to rebut the presumption is slight, evidence of the defendant's community ties, character, and lifestyle are typically insufficient to rebut the presumption. *See Delker*, 757 F.2d at 1396; *United States v. Strong*, 775 F.2d 504, 508 (3d Cir. 1985); *but see Carbone*, 793 F.2d at 561 (noting defendant's evidence of community ties, character, and an atypical amount of community support rebutted presumption of dangerousness).

6

Turning to the instant case, the Government has established probable cause to believe that Defendant has violated the Controlled Substances Act through the evidence presented at his detention hearing and the Indictment itself. Thus, the rebuttable presumption applies in this case. As Magistrate Judge Dodge pointed out at the detention hearing, Defendant did not produce any independent evidence at the hearing and has offered scant evidence in the additional documents given to the Court. (Docket No. 109-9 at 27). The Court's review of those records reveals that Defendant made some tax payments and held unverified employment with Curtis Trucking, K-Builders, and Shell Catering, although he did not advise Pretrial Services of that employment during his bond interview. *Pretrial Bond Report* at 2. Since Pretrial Services has not been able to verify that employment, the Court cannot conclude such employment is legitimate. *See United States v. Hammond*, Cr. No. 16-121, 2016 WL 7384175, at *3 (W.D. Pa. Dec. 21, 2016) ("Because the Pretrial Services/Probation Office is unable to verify such employment, the Court concludes that Defendant lacks verifiable legitimate employment."). Given the conflicting record of Defendant's employment, he has not met his burden in rebutting the presumption of detention and thus the presumption applies in this case. *See Perry*, 788 F.2d at 118.

Although Defendant should be detained pursuant to the presumption found in 18 U.S.C. § 3142(e)(3)(A), he would also be detained pursuant to 18 U.S.C. § 3142(e)(1) as "no condition or combination of conditions will reasonably assure the safety" of others if he was released. 18 U.S.C. § 3142(e)(1); *see United States v. Thomas*, 2016 WL 890583, at *6 (W.D. Pa. Mar. 9, 2016). If the presumption is rebutted by the defendant, then the burden of persuasion remains with the Government and the Government must demonstrate by a preponderance of the evidence that the defendant is a flight risk or show by clear and convincing evidence that he is a danger to others. 18 U.S.C. § 3142(f); *see United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986); *United States*

*v. Charga*, 850 F. Supp. 354, 357 (W.D. Pa. 1994). In evaluating if the Government has met its burden, courts conduct an individualized assessment and weigh the evidence in light of the four factors set forth in 18 U.S.C. § 3142(g), i.e.:

> (1) the nature and circumstances of the offense charged […];
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see Thomas*, 2016 WL 890583, at *6. The Court now discusses each of the § 3142(g) factors, in turn.

First, the nature and circumstances of the offenses weigh in favor of Defendant's detention as the instant offenses are extremely serious. In creating the Bail Reform Act, Congress considered drug transactions carrying a maximum penalty of at least ten years serious enough to justify imposing an evidentiary burden on defendants to secure their release. *See Strong*, 775 F.2d at 507. If convicted of the instant offenses, Defendant faces a mandatory minimum of ten years' incarceration and up to life imprisonment. *See* 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(ii); 846. The Government proffers that Defendant agreed to sell sixteen kilograms of cocaine worth between $320,000 and $576,000 to a confidential source. (Docket No. 109-9 at 35). If one large transaction

8

was not serious enough, Defendant discussed the opportunity for additional drug transactions at regular intervals with the confidential source and attempted to avoid detection in several ways. (*Id*. at 8-12). First, he met with the confidential source the day before the transaction, and they purchased new cell phones to establish the details of the transaction. (*Id*. at 8-10). Next, on the day of the transaction, he enlisted the assistance of a co-conspirator and they traveled in-tandem to Pittsburgh, an established method used by sophisticated drug traffickers. (*Id*. at 11). Finally, Defendant used a masking agent to conceal the scent of narcotics. (*Id*. at 13). The substantial value and quantity of the cocaine and attempted countermeasures demonstrate Defendant's sophisticated understanding of drug trafficking and the seriousness of the instant offenses. Altogether, the serious nature and circumstances of the offenses weigh in favor of his detention.

Second, while Defendant is presumed innocent of the instant offenses, it appears that the weight of the evidence against him is strong. *See* 18 U.S.C. § 3142(g)(2). To that end, Defendant was recorded by store and aerial surveillance preparing for and engaging in the drug transaction. (Docket No. 109-9 at 8-12). He sold the cocaine to a confidential source, who alerted federal agents observing the transaction to the presence of drugs. (*Id*. at 11-12). Upon being alerted, law enforcement immediately arrested Defendant and his co-conspirator and seized the cocaine involved. (*Id*. at 12-13). The evidence against him is direct evidence of his involvement in drug trafficking, including the seizure of sixteen kilograms of cocaine, and his arrest during its sale. He has not objected to the Magistrate Judge's finding that this factor weighs against his release, and he has otherwise not previewed any defenses to the charges at this point. (*See* Docket Nos. 103; 114). Therefore, the Court finds that this factor overwhelmingly favors detention.

Third, the evidence of Defendant's history and characteristics, the factor most favorable to his request, also supports his detention. *See* 18 U.S.C. § 3142(g)(3)(A). To his credit, Defendant

9

has limited criminal history, no significant mental health issues, and no clear record of violating conditions of release or failing to appear for court.[2] *Pretrial Bond Report* at 2-4. He also has no serious physical health issues, but he experienced high blood pressure after his incarceration, which has since been treated. (Docket No. 114 at 2). The Government concedes and the Court will accept that Defendant had legitimate income in 2020 for which he paid taxes. (Docket No. 109 at 10); *see Pretrial Bond Report* at 2. With that said, those factors are outweighed by the other evidence. Although Defendant claims to own several businesses operating in the Northeast Ohio area, the Government proffered that those businesses were not actually functioning. (Docket No. 109-9 at 14). The non-existence of those entities combined with the quantity and value of cocaine involved in this matter raises additional questions about the source of Defendant's monthly income, reportedly about $12,500. *Pretrial Bond Report* at 2. Given same, Defendant's attendance at a meeting organized by Raphael Cauthen, a suspected drug trafficker, and Cauthen's designation of Defendant as the confidential source's point of contact for any drug transactions sanctions the belief that Defendant has a history of drug trafficking but evaded detection before the instant offenses. (*See* Docket No. 109-8; 109 at 8-9). To address these concerns, Defendant offered additional evidence regarding his employment. (Docket No. 89). However, Pretrial Services was not able to verify his alleged additional employment and the Court cannot conclude that his employment and income are legitimate. *See Hammond*, Cr. No. 16-121, 2016 WL 7384175, at *3 (W.D. Pa. Dec. 21, 2016). After considering Defendant's history and characteristics, the Court concludes that this factor slightly supports his detention.[3]

---

[2]    In June 2020, at the height of the COVID-19 pandemic, Defendant failed to appear for a traffic matter. *Pretrial Bond Report* at 3-4. Given the circumstances, the Court credits Defendant's argument at the detention hearing and does not consider Defendant's failure to appear to be serious. (*See* Docket No. 109-9 at 26).

[3]    The Court also notes that other evidence may establish that Defendant is a serious flight risk. *See* 18 U.S.C. § 3142(g)(3). He is a Jamaican citizen and permanent resident in the United States. (Docket No. 114 at 2); *Pretrial*

Fourth, Defendant's release poses a danger to the community.[4] Although Defendant contends that a non-violent drug trafficking offense is not dangerous, the Court finds this argument misplaced. *See United States v. Gibson*, 481 F.Supp.2d 419, 423 ("[V]iolence is not the only danger to the community this court must consider. The Court must also consider the danger of trafficking in illicit drugs."). As this Court has consistently stated, "[d]rug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs like…cocaine." *United States v. Oliver*, 2016 WL 1746853, at *8 (W.D. Pa. May 3, 2016). Defendant engaged in a sophisticated drug trafficking operation, which this Court and Congress believe is a significant danger to the community. *See United States v. Cruse*, No. 13-157, 2018 WL 5281679, at *4 (W.D. Pa. Oct. 24, 2024) (Congress considers the seriousness of the offense when requiring mandatory minimum sentences). During two meetings with the confidential source, Defendant organized the delivery of sixteen kilograms of cocaine and explored future deliveries on a regular basis. (Docket No. 109-9 at 8-11). The drug

---

*Bond Report* at 1-2. As a non-citizen, he faces potential immigration penalties related to the instant offenses, including deportation, which only further incentivizes his non-appearance. *See* 8 U.S.C. 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance…is deportable."); *United States v. Abdullah*, 488 F.Supp.2d 433, 442 (D.N.J. 2007) ("The threat of a long prison term, coupled with an involuntary deportation, creates a substantial incentive for defendant to flee."). Moreover, his only connection to the Western District of Pennsylvania appears to be the instant offenses as he resides in Bedford, Ohio, and his family lives in Connecticut, New York, Florida, and Jamaica. *Pretrial Bond Report* at 2. Although he does not possess a U.S. passport, he has traveled to Jamaica. *Pretrial Bond Report* at 2-3. It is unclear from the record if Defendant possesses a Jamaican passport or how he traveled to Jamacia without a U.S. passport. In any event, foreign travel indicates an ability to travel not just outside the jurisdiction, but internationally. In all, Defendant has no community or family ties to the Western District and abundant connections to other places, including a foreign country. The absence of connections to the Western District increases the risk that he will not appear at proceedings in this matter. *See* 18 U.S.C. § 3142(g)(3)(A). However, since the Court agrees with Magistrate Judge Dodge that no condition or combination of conditions could reasonably assure the safety of the community, the Court does not revisit her flight-risk determination.

[4] Even if Defendant rebuts the presumption that no condition or combination of conditions could reasonably assure his appearance or the safety of the community, the Court may take that presumption into account in evaluating his dangerousness. 18 U.S.C. § 3142(e)(3); *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Since the Court found that the presumption applies in Defendant's case, it has also considered same in evaluating his dangerousness pursuant to 18 U.S.C. § 3142(g)(4).

11

quantity, the methods used to conceal detection, and the possibility of future deliveries highlights the prowess of Defendant's drug trafficking operations. (*See* Docket No. 109-9 at 33-37). Given the dangerous, sophisticated, and continuing nature of Defendant's alleged drug trafficking, this factor also weighs in favor of his detention.

For all of these reasons and after carefully weighing all of the facts of record, the Court concludes that the Government demonstrated by clear and convincing evidence that no condition or combination of conditions would assure the safety of the community if he was released pending trial. Accordingly, Defendant's Motions are denied.

V.  CONCLUSION

Based on the foregoing, Defendant's Motions for Release of Prisoner (Docket Nos. 103; 114) are DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: April 3, 2025

cm/ecf: All counsel of record